**A. L. T., a child under the age of eighteen (18) years, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**Nos. J–79–373 to J–79–376.**

Court of Criminal Appeals of Oklahoma.

July 1, 1980.

Major Wilson, Asst. Public Defender, Oklahoma County, for appellant.

Andrew M. Coats, Dist. Atty., David H. Hardwicke, Asst. Dist. Atty., for appellee.

## OPINION

BRETT, Judge:

The appellant, A. L. T., a juvenile, was certified to stand trial as an adult in the four cases which are the subject of this appeal. He challenges findings of prosecutive merit and certification in each case.

In Case No. J–79–373 (Murder in the Second Degree), testimony at a prosecutive merit hearing indicated that the appellant was involved in a robbery at a beauty salon at 16th Street and Drexel on December 21, 1978, in which the proprietor, Wallace Crowe, suffered head injuries which later resulted in death. In a "tainted" confession, the appellant revealed that he grabbed Mr. Crowe's wallet and pushed the victim on the day of the robbery, according to the testimony of a police detective.

In Case No. J–79–374 (Robbery With a Dangerous Weapon), the night auditor at the Sieber Hotel testified that on October 21, 1978, the appellant came into the hotel and asked for change, returned 20 minutes later for more change, and beat her with a stick. She lost consciousness for a few minutes.

In Case No. J–79–375 (Burglary in the First Degree), testimony at a prosecutive merit hearing indicated that on January 29, 1979, the appellant forced his way into a home on 18th Street.

In Case No. J–79–376 (Robbery by Force and Fear), testimony at a prosecutive merit hearing revealed that the appellant was involved in a robbery on February 15, 1979,

at Frankie's Donut Shop in which a clerk was threatened.

The appellant challenges findings of certification and prosecutive merit in all four cases, alleging that (1) he was illegally detained in the Oklahoma City jail for ten days without any petition, bond, or right to counsel; (2) there was no evidence presented at the certification hearing on which the court could find the appellant would not be amenable to rehabilitation through the juvenile system; (3) only in Case No. J–79–373 (Murder in the Second Degree) his incriminating statements were inadmissible, and should have been suppressed.

■ In the interest of clarity, this Court will address the issue of incriminating statements peculiar to Case No. J–79–373 first. The record indicates that the appellant was taken into custody on February 16, 1979, as a robbery suspect. Detective Robert Shahan testified at a prosecutive merit hearing that on February 18, 1979, he questioned the appellant, trying to clear up some residential burglaries. The detective did not initiate the conversation, but did specifically ask the appellant about a robbery at 16th Street and Drexel. The detective testified that the appellant admitted robbing a gentleman at that location. The detective pressed him for details, which the appellant supplied. The appellant described the location of the robbery and the man robbed.

This entire conversation took place without the appellant being advised of his constitutional rights. Detective Shahan did not administer Miranda warnings to the appellant, nor was there a waiver of rights indicated, nor was the appellant's father present.

Following this conversation, the detective checked police records and discovered that the robbery described by the appellant was being investigated as a homicide by Detective Bill Harrison, because a man, Wallace Crowe, was allegedly beaten at the location described by the appellant. Mr. Crowe died later.

Detective Shahan told Detective Harrison about the incriminating statements made by the appellant concerning that robbery. The next day, Detective Harrison with the appellant's father present administered Miranda warnings to both. Waivers were signed. The appellant then described the robbery which left Wallace Crowe dead. This conversation can only be described as an amplification of the incriminating statements made by the appellant one day earlier to Detective Shahan.

The appellant contends that the incriminating statements made on February 18, 1979, to Detective Shahan without Miranda warnings tainted the subsequent amplification to Detective Harrison on February 19, 1979. We agree, finding this to be a classic example of what the Miranda warnings were designed to prevent: self-incrimination by one in police custody without being advised of the right to counsel, the presence of a parent in the case of a juvenile, and the right to remain silent. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When Detective Shahan questioned the appellant, Miranda warnings were not given advising the appellant of his right to counsel or of his right to remain silent. The information from this tainted confession was supplied to Detective Harrison, who conducted the questioning session the next day in which the appellant repeated and amplified what he had told Detective Shahan the previous day.

The State claims that the incriminating statements made on the 19th (the second day) were voluntary and, thus, should be admissible against the appellant in the prosecutive merit and certification hearing. If such were the case, the Miranda warnings would be stripped of their effect—protection of the constitutional rights of one in police custody. If the subsequent confession was not tainted by the illegal confession the previous day, Miranda warnings would be reduced to a cure-all for previous improper police behavior. The appellant's incriminating statements are clearly not admissible. In J. T. P. v. State, Okl.Cr., 544 P.2d 1270, 1276 (1975), this Court articulated when juvenile confessions are inadmissible:

"[T]here is no rational basis for a rule which would permit an illegally obtained confession to be introduced into evidence at a certification hearing when the same confession would be clearly excluded at a delinquency hearing or a criminal trial. In addition we believe it to be contrary to the fundamental policy of the juvenile court system to permit a child within its jurisdiction to stand trial as an adult with no consideration of whether an admission or confession obtained from him was taken under circumstances which make its trustworthiness suspect. We hold that it is the duty of the judge of the juvenile court to deny admission into evidence at a certification hearing those statements of a child, obtained in violation of constitutional or statutory rights, which are inadmissible in delinquency or criminal proceedings. . . . " (Citations omitted)

To permit a repeat performance with *Miranda* warnings the next day in which the tainted information was used, would be to foster a sham. The *Miranda* warnings afford protection for the accused. They are not a curative statute for prior police mistakes.

Although the subsequent confession of the 19th was taken after *Miranda* warnings were given and waivers signed, we cannot ignore the previous day's illegal confession. But for the first illegal confession, the second confession may never have taken place. We must assess the voluntariness of the second confession in light of the first.

The appellant did not voluntarily stroll into the police station to offer a confession. He could not leave at his will but, rather, was in jail, suspected of having committed a crime. It is specifically this type of in custody questioning in which *Miranda* warnings are mandatory.

■ The State in its brief claims the detective did not "interrogate" or "question," but did "inquire" of the appellant.

Although Detective Shahan did not initiate the conversation, he did press the issue by asking the appellant to describe the victim and scene of the robbery. Before such questions are asked of a person in police custody, *Miranda* warnings must be given. *Miranda v. Arizona*, supra.

We *REVERSE* and *REMAND* findings of prosecutive merit and certification in Case No. J–79–373 (Murder in the Second Degree) for further hearing with instructions to examine first the question of whether there exists evidence sufficient to show commission of the crime and probable cause to believe the appellant committed the crime charged, beyond that of the illegally obtained confession.

■ In all four cases, the appellant claims he was held between February 16, 1979 and February 26, 1979, in the Oklahoma City jail without any petition, bond, or appointment of counsel, in violation of his constitutional rights. The record indicates otherwise.

At the time of the appellant's arrest, the reverse certification statute, 10 O.S.Supp. 1978, § 1112(b), was the law.[1] The record indicates that the appellant was arrested on February 16, 1979, as a suspect in a robbery. He was charged as an adult five days later, on February 21, 1979, with Murder in the Second Degree. Both the prosecution and the appellant claim in their briefs that juvenile charges were not filed until February 26, 1979. But, a careful review of the record indicates that juvenile charges were filed February 22, 1979. The appellant did not sit in jail for ten days without being charged, as he asserts in his brief. The record reflects the police officers, acting under color of state law, treated the appellant as they would any adult likewise arrested. Under the statute then in force, the police followed procedures authorized by state law. A petition was filed and an appearance made within six days of his arrest.

1. In *State ex rel. Coats v. Johnson*, Okl.Cr., 597 P.2d 328 (1979), this Court held that 10 O.S. Supp.1978, §§ 1104.2 and 1112(b), were unconstitutionally vague. Adult charges which justify the original detention were subsequently dismissed on May 18, 1979, and the prosecution took the burden of proof to certify the appellant as an adult. There is no reverse certification issue on appeal.

Next, the appellant asserts that there was no evidence presented at the certification hearing on May 11, 1979, on which to conclude he was not amenable to rehabilitation through the juvenile system. The appellant contends that the lower court did not take into consideration all five factors listed in 10 O.S.Supp.1978, § 1112, as a basis for certification. A thorough review of the transcript of the certification hearing reveals that all relevant factors were considered. We find no abuse of discretion by the lower court. This proposition of error is without merit.

The appellant specifically challenges the finding of prosecutive merit in Case No. J–79–374 (Robbery With a Dangerous Weapon), contending the facts do not support the crime of robbery. The record indicates that the lower court found a crime had been committed and that there was probable cause to believe the appellant committed the crime. *J. T. P. v. State*, supra. We find this proposition of error to be without merit.

We *AFFIRM* the findings of prosecutive merit and certification in Case Nos. J–79–374, J–79–375, and J–79–376.

We *REVERSE* and *REMAND* in Case No. J–79–373.

BUSSEY, J., concurs in results.

CORNISH, P. J., concurs in J–79–374, J–79–375, J–79–376; dissents in J–79–373.