766 P.2d 351 (1988)
A.M.H., Appellant,
v.
STATE of Oklahoma, Appellee.
No. J-88-276.
Court of Criminal Appeals of Oklahoma.
November 18, 1988.
Terry J. Hull, Asst. Appellate Public Defender, Norman, for appellant.
Bobby C. Ramsey, Robert C. Jenkins, Asst. Dist. Attys., Jay, for appellee.

*352 OPINION
BRETT, Presiding Judge:
Appellant, A.M.H., age 16 years, was charged with the offense of First Degree Murder in Delaware County, Oklahoma, under the reverse certification statute, in CRF-87-187. He filed a motion for certification to the Juvenile Division of the Court under 10 O.S.Supp. 1986, § 1104.2. Appellant's motion was denied and he appeals.
Appellant was apprehended in Bristow, Oklahoma, and was thought to be a runaway child. The Bristow Police notified Sheriff Hughes of Delaware County. He and Deputy Carl Sloan went to Bristow on November 17, 1987, and returned A.M.H. to Delaware County. At the time, appellant was not a suspect in the homicide discovered on November 6, 1987.
On November 18, appellant's mother was present when the authorities began to interrogate A.M.H. concerning any knowledge he might possess relative to the death of his seventy-eight year old grandmother, Florence Downing. The deceased's body was found in her trailer house on November 6, 1987. She had been shot by a 16 gauge shotgun at close range. The autopsy report revealed that her death resulted from a gun shot wound to the left chest, resulting in trauma to vital organs and hemorrhaging. No gunpowder residue was present around the wound or within the wound track. Dr. Merchant testified that death, while not immediate, was very rapid.
Several officers were present during the initial interrogation of appellant. On November 19, 1987, O.S.B.I. Agent Thurman entered the picture. Since little progress was being made with the interrogation, sometime between 10:30 and 11:30 a.m., Agent Thurman suggested that everyone *353 leave the room, except appellant and himself. He testified that "I told [A.M.H.] that he was not being truthful with Law Enforcement Officers and that he knew more about the death of Florence Downing and I thought that he was involved, and that it was a burden for him to be carrying  being involved in it was it was time for him to be truthful with Law Enforcement Officers." (PH Tr. I, p. 29) His continued testimony was along the same lines, with some embellishment. But, he insisted that he did not question appellant, but only visited with him. He also advised appellant that should he decide to tell more, his mother would be present. He related that the young man decided to confess, and his mother was called back into the room.
During the time appellant made his confession, Agent Thurman, appellant's mother and appellant were the only persons present. Appellant and his mother were both again advised of their "Miranda rights" before the confession was commenced. The tape recorder was turned on, and appellant confessed to his part in the homicide. The confession is most vital to the State's case against appellant.
Defense counsel filed a motion to suppress the confession which motion was overruled. Under the provisions of 10 O.S. Supp. 1986, § 1109, a juvenile's confession is not admissible against him if it was taken in the absence of "the presence of the parents, guardian, attorney, or legal custodian of the child." The reverse certification mechanism had not yet commenced to operate, because no charge[1] had yet been filed against appellant. At that particular moment, appellant was a sixteen-year-old juvenile. Therefore, the five minute period during which Agent Thurman "visited" with appellant is the critical period of time.
In his first assignment of error, appellant asserts that his confession was obtained in violation of his constitutional and statutory rights. 10 O.S.Supp. 1986, § 1109, clearly requires the presence of the parent, guardian, attorney or legal custodian of the child. There is no contention that appellant's Miranda rights were not explained to him and his mother. They both indicated that they understood those rights, and appellant's mother had on other occasions had those same rights explained to her. In fact, on at least four occasions during a series of interrogations those rights were explained, and appellant and his mother executed a written waiver. The only question presented concerns the five minute period when Agent Thurman was alone with appellant. It was right after that visit with appellant that the Agent came out of the room and advised appellant's mother "that [A.M.H.] had something to tell me and that it was necessary that she be present, and that he was going to talk to me about the  how the death occurred."
Appellant cites A.L.T. v. State, 614 P.2d 74 (Okl.Cr. 1980), to support his position. While the statements of law are pertinent, the facts of A.L.T. are inapposite to those in the instant case. In A.L.T. his rights were not explained to him prior to the questioning by one of the first officers who learned all the details of other crimes from A.L.T., nor were his parents, guardian or attorney present. A.L.T. was locked up in jail. Appellant asserts in his brief that it was not until information gained by "the secretive questioning" of (A.M.H.) by Agent Thurman that the confession was obtained. However, whether or not the "visit" by Agent Thurman was questioning becomes speculative and conjecture. His testimony reflects that it was not questioning. The appellee's brief does not discuss the critical five minute period. Instead, it concerns itself with only a discussion to the administration of the Miranda rights.
*354 We therefore hold that absent some testimony to the contrary, the magistrate did not commit error when she overruled appellant's motion to suppress the confession. This, however, does not preclude the trial court from conducting a proper in camera hearing in accordance with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), to ascertain a more complete reflection of what the "visit" consisted of. In this case, the magistrate had only the testimony of O.S.B.I. Agent Thurman to consider. When the magistrate entered her ruling on the confession, she limited her ruling to the prosecutive merit hearing only. When she stated, "Therefore, I am going to find at this point at least for the purpose of a prosecutive merit hearing, that there was a compliance with Section 1109 [Title 10] in this matter." Appellant's first assignment of error is denied.
Appellant's second assignment of error asserts that the court abused its discretion when it failed to certify appellant as a juvenile.
The prosecutive merit in this case is not at issue, except for the admissibility of appellant's confession. Since we have already found that, based upon the testimony before the magistrate, the confession was properly admitted. The confession is no longer an issue. Therefore, refusal to certify appellant as a juvenile is the only issue now to be resolved.
Title 10 O.S.Supp. 1986, Section 1104.2(C) requires the Court to consider four factors, listed in order of importance, when ruling on the certification motion. These factors are as follows:
1. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
2. Whether the offense was against persons or property, greater weight being given for retaining the accused person within the adult criminal system for offenses against persons, especially if personal injury resulted;
3. The record and past history of the accused person, including previous contacts with law enforcement agencies and juvenile or criminal courts, prior periods of probation and commitments to juvenile institutions; and,
4. The prospects for adequate protection of the public if the accused person is processed through the juvenile system.
In this case, the magistrate considered all four factors and entered her ruling thereon. Appellant complains that the magistrate did not accept for full value the testimony of the experts relative to appellant's amenability to rehabilitation. That is a matter of discretion for the magistrate, and in this case she did not abuse that discretion.
There was no doubt whatsoever that the offense was committed in an aggressive, violent, premeditated or willful manner. Appellant went to his grandmother's house and discovered she was talking on the telephone. So he laid in wait for her. He waited in an abandoned automobile, smoked a marijuana cigarette, and later entered the house after his grandmother was asleep. He went to the closet, where his deceased grandfather kept his shotgun. He removed it from the case, loaded it and deliberately shot his grandmother to death. He wiped his fingerprints off the gun with a paper towel. He placed it back into the gun case and returned it to the closet. He made a sandwich, ate it, and departed from the scene. He was later picked up as a runaway in Bristow, Oklahoma. Clearly the offense was committed against a person.
There was some evidence that appellant had some previous contact with the juvenile authorities. The extent to which that contact was required was a matter for the magistrate to determine. As the magistrate viewed the matter, she determined that adequate protection of the public required that appellant be treated as an adult under reverse certification statutes. See C.J.W. v. State, 732 P.2d 908 (Okl.Cr. 1987). We therefore find that the magistrate's determination that appellant should be treated as an adult was sufficiently founded on evidence before her. We therefore *355 deny appellant's second assignment of error.
For his third assignment of error, appellant asserts that this Court's interpretation of 10 O.S.Supp. 1986, § 1104.2, imposes an unconstitutionally impremissible presumption of appellant's competency to stand trial as an adult, thus shifting to him the burden of overcoming a near-irrebuttable presumption against him, in violation of the equal protection and due process clauses of the Fourteenth Amendment of the Federal Constitution and Article 2, § 7 of the Oklahoma Constitution.
This same contention was raised in State Ex rel. Coats v. Rakestraw, 610 P.2d 256 (Okl.Cr. 1980). In that decision, this Court held the statute to be constitutional. Later in Jones v. State, 654 P.2d 1080 (Okl.Cr. 1982), this Court was asked to overrule Rakestraw, which we declined to do. Again, we decline to overrule Rakestraw. See also S.R.S. v. State, 728 P.2d 515 (Okl.Cr. 1986).
After considering the records and briefs submitted in this appeal, we are of the opinion that the decision of the Magistrate in Delaware County District Court, Case No. CRF-87-187, declining to certify appellant as a juvenile, should be, and the same is, AFFIRMED.
BUSSEY, J., concurs.
PARKS, J., specially concurs.
PARKS, Judge, specially concurring:
With regard to appellant's claim that the State failed to comply with 10 O.S.Supp. 1986, § 1109(A), we have recently held that a juvenile who falls within the provisions of the Reverse Certification statute is an "adult", not a "child", and is thus not entitled to the special protections of Section 1109(A). See H.W. v. State, 759 P.2d 214, 216 (Okla. Crim. App. 1988); Highsaw v. State, 758 P.2d 336, 340 (Okla. Crim. App. 1988). "The reverse certification mechanism had not yet commenced to operate, because no charge had yet been filed against appellant. At that particular moment, appellant was a sixteen-year-old juvenile." Majority, at 353. This language indicates that a juvenile will be considered a "child" entitled to the special protections of Section 1109(A), unless questioning by authorities occurs after the juvenile has been charged with a reverse certification offense, in which case the juvenile will be treated as an adult.
The foregoing language in the majority opinion may be consistent with H.W., where the juvenile was treated as an adult, because she had been charged with a reverse certification offense, H.W., 759 P.2d at 216. However, it is inconsistent with Judge Brett's unanimous opinion in Highsaw, where the juvenile was treated as an adult, because he had been "arrested and booked" for reverse certification offenses. Highsaw, 758 P.2d at 340. Thus, the question arises whether a juvenile must be "charged" by Information with one of the enumerated offenses in the reverse certification statute prior to questioning not in compliance with Section 1109(A). See 10 O.S.Supp. 1987, § 1101(1); 10 O.S.Supp. 1986, § 1104.2(A). When does a sixteen or seventeen year old juvenile become an adult outside the special protections provided for children in Section 1109(A)? Here, the record supports the magistrate's finding that Section 1109(A) was followed. Therefore, we must wait for an appropriate case to address the apparent conflict in our prior cases. Accordingly, I concur.
NOTES
[1] 10 O.S.Supp. 1986, § 1104.2, provides in part: Any person sixteen (16) or seventeen (17) years of age who is charged with murder, ... shall be considered as an adult. Upon the arrest and detention, such sixteen or seventeen-year-old accused shall have all the statutory and constitutional rights and protections of an adult accused of a crime, but shall be detained in a jail cell or ward entirely separate from prisoners who are eighteen (18) years of age or over. (emphasis added)