2006 OK CR 44

**Robert Lee HEAD, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. F–2004–1290.

Court of Criminal Appeals of Oklahoma.

Oct. 24, 2006.

Traci Rhone, Assistant Public Defender, Oklahoma County Public Defender's Office, Oklahoma City, OK, attorney for defendant at trial.

C. Wesley Lane, District Attorney, Ken Stoner, Assistant District Attorney, Oklahoma City, OK, attorneys for State at trial.

Emma V. Rolls, Assistant Public Defender, Oklahoma County Public Defender's Office, Oklahoma City, OK, attorney for appellant at appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Jay Schniederjan, Attorney General, Oklahoma City, OK, attorneys for appellee at appeal.

## *OPINION*

A. JOHNSON, Judge.

¶ 1 Robert Lee Head, Appellant, was tried by jury in the District Court of Oklahoma County, Case No. CF–2003–1178, and convicted of the following: (1) Robbery in the First Degree after former conviction in violation of 21 O.S.2001, § 791(Count 1); (2) Resisting Arrest in violation of 21 O.S.2001, § 26 (Count 2);[1] (3) Possession of a Controlled Dangerous Substance (crack cocaine) in violation of 63 O.S.2001, § 2–402 (Count 3);[2] and (4) Possession of Drug Paraphernalia in violation of 63 O.S.2001, § 2–405 (Count 4). The jury set punishment at forty years on the robbery count, one year on the resisting arrest count, eight years on the cocaine possession count, and one year on the drug paraphernalia count. The Honorable Susan P. Caswell, District Judge, sentenced Head according to the jury verdict and ordered that the sentences run consecutively. From this Judgment and Sentence Head appeals raising four propositions of error. We find none requires relief and affirm.

## Background

¶ 2 During the early evening hours of February 19, 2003, Mr. Linh Pham was working at a convenience store in Oklahoma City when a man entered and yelled "[g]ive me the money." The man then reached across the counter, grabbed Pham's tee shirt, tore it, and attempted to strike Pham. The assailant then picked up the cash register and carried it out of the store. Pham summoned police with an alarm button.

¶ 3 Responding to a radio broadcast about the incident, Officer Wayne Barney of the Oklahoma City Police Department went to a wooded creek area two blocks east of the convenience store because the suspect had reportedly carried the cash register in that direction. There Officer Barney spotted Head and ordered him to stop. Head ran and the officer gave chase, noticing a broken cash register on the ground where he had first seen Head.

¶ 4 Other police officers, including Officer Douglas Hurst, joined in the foot chase. Officer Hurst repeatedly told Head to stop, but Head kept running. Head ran through the yard of a house and began to climb over a chain link fence. Officer Hurst pulled out his asp (baton), grabbed Head's collar and tried to pull him off the fence. Head elbowed Officer Hurst in the mouth and knocked him to the ground. Head then ran away with Officer Hurst still in pursuit. Several times during this portion of the chase, Officer Hurst heard Head say "[l]eave me alone, I didn't take nothing, I was just smoking crack."

---

1. In Count 2, Head was charged with Assault and Battery Upon a Police Officer in violation of 21 O.S.2001, § 649. The jury found him guilty, however, of the lesser included offense of Resisting Arrest.

2. In Count 3, the amended charging Information charged Head with simple possession of a controlled dangerous substance (cocaine base) in violation of 63 O.S.2001, § 2–402 (O.R.80). The trial court's Judgment and Sentence document incorrectly states, however, that Head was found guilty of a violation of 63 O.S.2001, § 2–401 (possession with intent to distribute) (O.R.146). Because of this scrivener's error, we remand the case to the trial court for the sole purpose of issuing an order *nunc pro tunc* correcting the Judgment and Sentence document to reflect that 63 O.S.2001, § 2–402 was the statutory basis for conviction.

¶ 5 Officers eventually caught Head and arrested him. The search of his person disclosed a "crack pipe." Police officers brought the store clerk to the location but he did not identify Head as his assailant.

## I. Sufficiency of the Evidence

¶ 6 In his first proposition of error, Head contends that the evidence was insufficient to support his conviction for possession of a controlled dangerous substance. He argues that the quantity of cocaine base found in the crack pipe recovered from his person at the time of his arrest was insufficient to support conviction. We review a challenge to the sufficiency of the evidence in the light most favorable to the State and will not disturb the verdict if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203–204.

¶ 7 Matthew Scott, a forensic chemist with the Oklahoma City Police Department, testified that he could readily observe a "charred residue" in the pipe and that his testing identified the residue as containing cocaine base (crack cocaine). The quantity of residue inside the pipe was so small, however, that Scott was unable to provide a weight for the portion of the residue that tested positive for cocaine base. According to Head, this "immeasurable" quantity of crack cocaine is insufficient to support a conviction. We rejected this argument in *Spriggs v. State*, 1973 OK CR 275, ¶ 12, 511 P.2d 1139, where we held that the quantity of the drug possessed is not material in a prosecution for controlled dangerous substance possession because the relevant statute does not prescribe any minimum amount that must be possessed. Nevertheless, even if the quantity of cocaine base contained in the residue is somehow deemed insufficient to support a conviction by itself, when the residue is coupled with Head's shout to Officer Hurst to "[l]eave me alone, I didn't take nothing, *I was just smoking crack* " (Tr. I 232)(emphasis added), the evidence is sufficient to establish that Head knowingly possessed some quantity crack cocaine beyond the residual amount found in the crack pipe.

## II. Multiple Punishment Issues

¶ 8 In his second proposition of error, Head contends that his convictions for possession of a controlled dangerous substance and possession of drug paraphernalia violate Oklahoma's statutory prohibition against multiple punishments for a single act. He also claims the multiple punishments violate the Double Jeopardy clause of the United States Constitution.

¶ 9 Claims of violations of double jeopardy protections are waived where they were not raised in the trial court. *Johnson v. State*, 1980 OK CR 45, ¶ 30, 611 P.2d 1137, 1145. Head failed to raise either a constitutional double jeopardy claim or a statutory multiple punishment claim in the district court. He has therefore waived the issues and we review only for plain error. *Simpson v. State*, 1994 OK CR 40, ¶ 23, 876 P.2d 690, 698–99.

¶ 10 Under plain error analysis, we must first determine whether error (i.e., deviation from a legal rule) occurred. *Simpson*, 1994 OK CR 40, ¶ 10, 876 P.2d at 694. The questions of whether possession of contraband drugs and possession of contraband drug paraphernalia constitute a single act not subject to separate punishments under our statutes or the Double Jeopardy Clause of the United States Constitution present questions of first impression for this Court.

### A. Statutory Claim

¶ 11 Title 21 O.S.2001, § 11(A) governs multiple punishments for a single criminal act. Section 11 provides in relevant part that:

> [A]n act or omission which is made punishable in different ways by different provisions of this title may be punished under any of such provisions, ... but in no case can a criminal act or omission be punished under more than one section of law; and an acquittal or conviction and sentence under one section of law, bars the prosecution for the same act or omission under any other section of law.

The proper analysis of a § 11 claim focuses on the relationship between the crimes.

*Davis v. State,* 1999 OK CR 48, ¶ 13, 993 P.2d 124, 126. Because § 11 complements the double jeopardy protections of the Oklahoma and United States Constitutions, a traditional double jeopardy analysis is conducted only if § 11 does not apply. *Mooney v. State,* 1999 OK CR 34 ¶ 14, 990 P.2d 875, 882–883. To determine whether Head's multiple punishments are legal error for purposes of plain error review, we must construe § 11's "same act" language to determine whether § 11 has any application to the acts punished in this instance.

¶ 12 According to Head, he did not commit two separate and distinct crimes, but rather committed a single act of possessing paraphernalia (a crack pipe), an act that necessarily encompassed the crime of possession of a controlled dangerous substance (i.e., the residue contained within the crack pipe). To advance this argument, Head assumes that the cocaine base he was convicted of possessing consisted solely of the quantity of cocaine base detected in the charred residue in his crack pipe.[3] He assumes further that both acts of possession are incident to the same criminal objective and therefore conflate into a single act of possession subject to § 11's prohibition against multiple punishments.[4] Thus, Head interprets § 11 to mean that possession of drug paraphernalia and possession of a controlled dangerous substance constitute the same unlawful act when the item of contraband paraphernalia is used as the storage container for the contraband substance.

¶ 13 In construing a statute, our task is to determine and give effect to the intent of the Legislature as expressed in the statute. *State v. Anderson,* 1998 OK CR 67, ¶ 3, 972 P.2d 32, 33. To determine the intent of a legislative enactment, we look, among other things, to the evils and mischief to be remedied and to the natural and absurd consequences of any particular interpretation. *Id.* Where construction of a statute produces anomalous or absurd results, we must presume that such consequences were not intended and adopt a reasonable construction that avoids the absurdity. *Taylor v. State,* 1962 OK CR 161, ¶ 15, 377 P.2d 508, 511. Head's construction of § 11 and the controlled substance and paraphernalia possession statutes leads to logically contradictory results that, absent some indication of specific legislative intent, we simply cannot presume were intended by the legislature.

■ ¶ 14 Specifically, under Head's interpretation of what constitutes a single act for § 11 purposes, an individual who uses an item of drug paraphernalia (e.g., a crack pipe) as the container for storing a contraband substance (e.g., crack cocaine) may be subject to punishment for just one possession offense (i.e., possession of the crack pipe, or the cocaine, but not both). Under this rationale, another individual who happened to store crack cocaine in a plastic bag, but not in his crack pipe, would be exempt from § 11's multiple punishment prohibition and thus in jeopardy of punishment for both of-

3. The premise for this portion of Head's argument is questionable. The controlled dangerous substance he was convicted of possessing was not necessarily just the quantity of cocaine base found in the residue in the pipe. Rather, the jury more likely viewed the crack pipe and cocaine base residue contained within it as corroborating evidence of Head's possession of a larger quantity of cocaine base that was necessarily implied by his shout to Officer Hurst that "I was just smoking crack" (Tr. I 232).

4. To establish this premise, Head relies on the "ultimate objective" test set out in our decision in *Hale v. State,* 1995 OK CR 7, 888 P.2d 1027. In *Hale,* we held that § 11 is violated when a defendant is convicted of two offenses, one of "which is (1) a mere means to some other ultimate objective, (2) a lesser offense included in some other offense, or (3) merely a different

incident or facet of some primary offense." *Id.* at ¶ 3, 888 P.2d at 1028. Head's reliance on *Hale* is misplaced. In *Davis v. State,* 1999 OK CR 48, ¶ 11, 993 P.2d 124, 126, we expressly rejected *Hale's* "ultimate objective/primary offense" test in the following words:

> The language in *Hale* has caused this Court, as well as countless attorneys and trial judges, to try and determine whether one crime is merely a means to some other objective or part of some primary offense.... Were we to continue with this "ultimate objective/primary offense" test, we would have the power to dismiss some crimes which "merely" tend to facilitate some ultimate crime, regardless of the nature of the crimes. The legislature has not given us this power. Therefore, *we specifically reject our prior cases which rely on an "ultimate objective" or "primary offense" test.*

(Emphasis added.)

fenses. Given the separate mischiefs clearly identified by the separate statutory provisions in this case (i.e., possession of contraband drugs versus possession of paraphernalia) we cannot reasonably conclude that the Legislature intended that § 11 produce the result of subjecting those who possess both drug paraphernalia and contraband drugs, but store drugs in a container separate from the paraphernalia, to greater punishment than those individuals who simply use the contraband paraphernalia itself as a storage vessel. Construing § 11 and the drug and paraphernalia possession statutes to permit this dichotomous result would produce an anomalous statutory scheme in which individuals could escape punishment for possessing separate items of contraband through the simple expedient of using one contraband object as the storage vessel for the other. It defies common sense to assume the legislature intended this result when it enacted the possession statutes. Thus, for purposes of § 11 multiple punishment analysis, we hold that possession of a controlled dangerous substance in violation of 63 O.S.2001, § 2–402 and possession of drug paraphernalia in violation of 63 O.S.2001, § 2–405 are separate acts, even where the contraband substance is possessed in a container that is itself an object of contraband drug paraphernalia.

### B. Double Jeopardy Claim

¶ 15 Because we conclude that possession of a controlled dangerous substance and possession of drug paraphernalia are separate acts, § 11 does not apply and we must perform a traditional double jeopardy analysis. *Mooney,* 1999 OK CR 34 at ¶ 14, 990 P.2d at 883. In cases of double jeopardy claims alleging improper multiple punishment in a single trial, this Court utilizes the same evidence test to determine whether each offense contains an element not contained in the other. *Id.* at ¶ 17, 990 P.2d at 883. Applying this test, Head's double jeopardy claim clearly fails.

¶ 16 On their face, 63 O.S.2001, § 2–402 and 63 O.S.2001, § 2–405 both require proof of an element not contained in the other. Specifically, 63 O.S.2001, § 2–402 prohibits possession of a controlled dangerous substance, whereas § 2–405 prohibits possession of paraphernalia that can be used, among other things, to inhale or ingest a controlled substance. Because § 2–402 and § 2–405 each require evidence of a different type of contraband, Head's allegation of multiple punishment error also fails under traditional double jeopardy analysis.

### III. Evidentiary Issues

¶ 17 In his third proposition of error, Head contends that Detective Thomas Wilson's testimony exceeded the scope of permissible opinion evidence. In particular, Head complains that Detective Wilson improperly testified that in his opinion the robbery victim, while failing to explicitly identify Head, when shown a photographic display, nonetheless indicated through body language that he recognized Head as the man who robbed him. Pham testified at trial and again failed to identify Head in court. Because Head did not object to Detective Wilson's testimony, we review only for plain error. *Cannon v. State,* 1998 OK CR 28, ¶ 17, 961 P.2d 838, 845–846.

¶ 18 Detective Wilson's testimony reflected his opinion, based on experience with robbery victims, that: (1) Pham was afraid to explicitly identify Head as the man who robbed him, and (2) Pham positively identified Head through the nonverbal medium of "body language."[5] In essence, the State

---

5. The transcript of Detective Wilson's testimony shows that he was asked by the prosecutor to describe his experience with robbery victims in identifying their robbers. Specifically, Wilson testified as follows:

   Q. Is it unusual for—when you show someone who has been a victim of a robbery that they don't necessarily pick someone out of a photo lineup?
   A. That's not unusual at all.
   Q. What's been your experience with victims of robbery and identifying those?

   A. Usually they're scared, they're afraid that, you know, a family member or somebody might come back and get them. They just—you know, you can just tell by their characteristics, by their eyes, how they look at things, they know if that is the person or not.
   . . .
   Q. Okay. So based on, I guess, your training and your experience in watching Mr. Pham's body language, how did that make you feel about his identification not being able to say

used Detective Wilson's testimony to interpret Pham's lack of explicit identification as a positive identification of Head as the guilty party. Using the testimony of a police officer in the guise of expert opinion in this manner is error. *See e.g., McCarty v. State,* 1988 OK CR 271, ¶ 7, 765 P.2d 1215, 1218 (finding that police chemist's opinion that defendant was physically present at time of murder amounted to impermissible expression of defendant's guilt and explaining that despite 12 O.S. § 2704 permitting expert opinion testimony on the ultimate issue, bolstering credibility of complaining witnesses through expert testimony usurps jury's fact-finding function because sole responsibility of jurors is to assess credibility of witnesses in light of their own experience); *United States v. Binder,* 769 F.2d 595, 602 (9th Cir.1985)(cited with approval in *McCarty* for finding error where expert witness testified in effect that two complaining witnesses in child molestation case could be believed).

■ ¶ 19 Although Detective Wilson's testimony was error, if Head is to prevail under plain error analysis, he must show that the error affected his substantial rights. *Hogan v. State,* 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923; *Simpson v. State,* 1994 OK CR 40, ¶ 30, 876 P.2d 690, 700–01. That is, Head must show that the error affected the outcome of the proceeding. *Id.* at ¶¶ 36–37, 876 P.2d at 702. In light of the significant quantity of other evidence from which the jury could reasonably infer that Head was the convenience store robber, we cannot conclude that in the absence of Detective Wilson's testimony, the jury would have reached a different

result. Thus, the error does not constitute reversible plain error.[6]

## IV. Sentencing Issues

¶ 20 In his fourth proposition of error, Head raises three separate claims of error relating to sentencing. We consider each in turn.

### A. Prior Convictions

■ ¶ 21 Head first claims that trial counsel was ineffective for failing to request that the judgment and sentence documents used to establish the facts of his prior convictions be redacted to delete certain references to sentences imposed in those cases. According to Head, when trial counsel timely objects and specifically requests that notations of the lengths of a defendant's sentences be redacted, a trial court must order the requested redactions. Therefore, Head contends, to the extent that trial counsel failed to object to the sentence information and request redactions, he rendered constitutionally ineffective assistance of counsel.

¶ 22 Here, of the four judgment and sentence documents used as evidence of former felony convictions, Head alleges that one of the documents showed the jury that he had "previously received the benefit of a suspended sentence," and that another showed that he received the benefit of "having a previous page 2 dismissed." Head does not identify which of the four judgment and sentence documents contain the allegedly offending information, and our review of the documents fails to disclose any reference to a "page 2"

that's the man but these aren't—these other six aren't?
A. I just felt that he was scared. I mean, you know, I thought that, you know the way he looked, that that was the person that did it, but just from his body language and the area that he's in, he's just afraid to be able to identify him because he's afraid of retaliation.
(Tr. II 84–85).

6. While acknowledging the fact that he did not object to Detective Wilson's testimony, Head also claims that the lack of objection by his trial attorney constituted ineffective assistance of counsel. To the extent Head repackages this claim as one of ineffective assistance of counsel, it still fails. To prevail on an ineffective assistance claim, a defendant must show to a reason-

able probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984). As noted in the main text, the evidence from which the jury could reasonably infer that Head was the robber was so strong that it is not possible to conclude that without Detective Wilson's testimony, the jury would have reached a different result. Thus, even if trial counsel had successfully objected to Detective Wilson's testimony it is not certain to the requisite degree of a reasonable probability that the result of the trial would have been different. Accordingly, Head's ineffective assistance claim is without merit.

dismissal. Head's claim seems to rest solely on a reference to a partially suspended sentence referred to in a judgment and sentence document for a 1994 Mississippi conviction for grand larceny.

¶ 23 To prevail on a claim of ineffective assistance of counsel, a defendant must affirmatively prove prejudice resulting from his attorney's failure to object. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 697 (1984). To accomplish this, it is not enough to show the failure had some conceivable effect on the outcome of the proceeding. *Id.* Rather, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

¶ 24 In this instance, given that there were four judgment and sentence documents introduced as evidence of former convictions, we are not persuaded that Head was prejudiced by a single reference to a partially suspended sentence in one of them. Even if the record of Head's Mississippi larceny conviction had been excluded in its entirety, not merely redacted to remove the reference to a partially suspended sentence, we cannot conclude to a reasonable probability on the basis of the remaining record that, but for counsel's failure, the result of the sentencing proceeding would have been different (i.e., Head would have received a lower sentence on any of his counts of conviction). Even with complete exclusion of the Mississippi document, three judgment and sentence documents would remain as evidence of former felony convictions thereby establishing Head's habitual offender status to an overwhelming degree. This claim is denied.

## B. Jury Consideration of Parole

▆▆▆ ¶ 25 Head complains next that the jury improperly considered the impact of parole in setting his punishment. According to Head, the jury indicated that it was considering the impact of parole through a note it sent out during its sentencing deliberations. In that note, the jury asked "[d]o sentences run concurrently?" Other than presenting his bald claim that the note showed the jury was improperly considering parole, Head provides no further argument linking the jury question about concurrent sentences to the subject of parole. In the absence of any argument on the point, we fail to see how the jury note merely asking about concurrent sentences shows that the jury was improperly factoring parole into its sentencing calculus.

▆▆▆ ¶ 26 Even were we to assume that the jury did engage in improper speculation about the possibility of parole, based solely on its note to the judge, Head's claim would still fail. Specifically, Head ignores the fact that the trial court judge, with Head's consent, responded to the jury note by admonishing the jury that "[t]his is not a matter for your consideration." It is well settled that we presume juries follow their instructions. *Ryder v. State*, 2004 OK CR 2, ¶ 83, 83 P.3d 856, 875. In this instance, we find nothing in the record to overcome the legal presumption that the jury obeyed the trial judge's admonishment. The trial judge's admonishment to the jury was sufficient to cure any error that may have occurred. *Cf. Gaines v. State*, 1977 OK CR 259, ¶¶ 5–7, 568 P.2d 1290, 1292 (finding no error in judge's answer to jury question about parole that "[m]y answer is that those matters are not for your consideration, that those are matters for the parole board to determine").

## C. Excessive Sentence

▆▆▆ ¶ 27 Head's last claim of sentencing error is that his sentence is excessive. A sentence within the statutory range will be affirmed on appeal unless, considering all the facts and circumstances, it shocks the conscience of this Court. *Rea v. State*, 2001 OK CR 28, ¶ 5 n. 3, 34 P.3d 148, 149 n. 3.

¶ 28 In this instance, Head was sentenced to forty years on the robbery count, one year on the resisting arrest count, eight years on the cocaine possession count, and one year on the drug paraphernalia count, with all sentences to run consecutively. Under Oklahoma's habitual offender statute at 21 O.S. 2001, § 51.1(B), Head's forty year sentence

on the robbery count was well within the prescribed twenty year to life imprisonment range. Likewise, Head's sentences on the resisting arrest, and the drug and paraphernalia possession counts were all well within their prescribed statutory ranges. Given the facts that Head had four prior felony convictions, and given further that two of the instant offenses (robbery and resisting arrest) were violent crimes, we find nothing in any of Head's individual sentences, nor the sentence in its totality, that shocks the conscience of this Court.

### V. Correction of Record

¶ 29 Finally, we note that Count 3 of the amended information charged a violation of 63 O.S.2001, § 2–402 (possession of controlled dangerous substance)(O.R.80). We further note that the jury was properly instructed on a § 2–402 violation (O.R.91) and returned a verdict of guilty on that charge (O.R.113). Nevertheless, the district court's judgment and sentence document reflects that Head was convicted for a violation of 63 O.S.2001, § 2–401 (possession of controlled dangerous substance with intent to distribute)(O.R.146). This is obviously a scrivener's error.

¶ 30 We have previously held that the record should accurately reflect the charge that is the basis of the conviction. *Arnold v. State,* 1987 OK CR 220, ¶ 9, 744 P.2d 216, 218. Accordingly, Head's Judgment and Sentence document must be corrected by an order *nunc pro tunc* clearly stating that his conviction on Count 3 was obtained for simply possessing controlled dangerous substance in violation 63 O.S.2001, § 2–402.

### *DECISION*

¶ 31 The Judgment and Sentence of the trial court is **AFFIRMED.** The case is **REMANDED,** however, for correction of the Judgment and Sentence document, through an order *nunc pro tunc* by the trial court, to reflect that Head's conviction for possession of a controlled dangerous substance in Count 3 was obtained for a violation of 63 O.S.2001, § 2–402. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22 Ch. 18, App. (2005), the **MANDATE** is

**ORDERED** issued upon the delivery and filing of this decision.

CHAPEL, P.J., LUMPKIN, V.P.J., C. JOHNSON and LEWIS, JJ.: concur.