2009 OK CR 12

**James T. FISHER, Appellant**

**v.**

**STATE of Oklahoma, Appellee.**

**No. D–2005–460.**

Court of Criminal Appeals of Oklahoma.

March 25, 2009.

John Albert, Mark A. Clayborne, Oklahoma City, OK, attorneys for defendant at trial.

Angela Marsee, Fern Smith, Assistant District Attorneys, Oklahoma City, OK, attorneys for the State at trial.

Janet Chesley, Traci Quick, Capital Direct Appeals Division, Oklahoma Indigent Defense System, Norman, OK, attorneys for appellant on appeal.

W.A. Drew Edmondson, Attorney General Of Oklahoma, Jennifer J. Dickson, Assistant Attorney General, Oklahoma City, OK, attorneys for the State on appeal.

## *OPINION*

### C. JOHNSON, Presiding Judge.

¶ 1 Appellant, James T. Fisher, was tried by a jury and convicted of one count of First Degree Murder in the District Court of Oklahoma County, Case No. CF 1983-137.[1] The State filed a Bill of Particulars alleging two aggravating circumstances: (1) the murder was especially heinous, atrocious and cruel; [2] and (2) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.[3] The jury found the existence of both alleged aggravating circumstances and assessed punishment at death. The trial court sentenced Appellant accordingly. From this Judgment and Sentence Appellant has perfected this appeal.[4]

## FACTS

¶ 2 On December 12, 1982, Terry Gene Neal was found dead in his Northwest Oklahoma City apartment. He had been stabbed in the neck with a broken bottle. From subsequent investigation, police learned that Neal was a bisexual who would drive around an area in downtown Oklahoma City and try to pick up men with whom he could engage in sexual relations. From talking to people in the area, investigators discovered that a man and a boy had been seen getting into Neal's car the evening of December 11, 1982. A description of the boy led police to Fadjo Johnson, a young, clean-cut, short, baby-faced, African-American boy. Johnson spoke with investigators and after initially denying any knowledge of the homicide, he admitted that he and a man named "James" had been picked up by Neal who took them to his apartment. Johnson identified Appellant as the person who had killed Neal. Appellant was located the following month in Buffalo, New York. He was subsequently extradited to Oklahoma to stand trial for the murder of Terry Neal.

¶ 3 Fadjo Johnson testified at Appellant's trial that on December 11, 1982, he went to downtown Oklahoma City to solicit sex. While waiting to be picked up he met Appellant on the street. Appellant was also waiting to be picked up. While the two were

1. Appellant was originally tried and convicted of first degree capital murder in this case in a jury trial held in September of 1983. He appealed to this Court and we affirmed his conviction in *Fisher v. State*, 1987 OK CR 85, 736 P.2d 1003, *reh'g granted*, 1987 OK CR 124, 739 P.2d 523, cert. denied, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988). Appellant's Application for Post Conviction Relief was denied by this Court in *Fisher v. State*, 1992 OK CR 79, 845 P.2d 1272. Appellant filed a petition for a federal writ of habeas corpus in the United States District Court for the Western District of Oklahoma in October of 1993. The district court denied Appellant's request for relief as to the guilt/innocence stage of trial, but granted a retrial of the second stage based upon ineffective assistance of counsel. This decision was appealed to the Tenth Circuit Court of Appeals which upheld the district court's ruling as to the second stage but reversed the court's ruling as to the first stage and granted Appellant a new trial as to the guilt/innocence stage of trial as well. *Fisher v. Gibson*, 282 F.3d 1283 (10th Cir.2002). Appel-

lant was retried by a jury in the District Court of Oklahoma County in April of 2005. It is from his conviction in this second trial that Appellant now appeals.

2. 21 O.S.2001, § 701.12(4).

3. 21 O.S.2001, § 701.12(7).

4. Appellant's Petition in Error was filed October 12, 2005. Appellant's Brief in Chief was filed September 18, 2006. Appellee's Answer Brief was filed April 5, 2007. Appellant's Reply Brief was filed April 25, 2007. This matter was submitted to this Court on April 9, 2007. The case was remanded to the District Court for an Evidentiary Hearing on July 24, 2007. The Evidentiary Hearing was held on March 20-21, 2008. The District Court's Formal Findings of Fact and Conclusions of Law were filed May 21, 2008. Appellant's Supplemental Brief was filed June 10, 2008. Appellee's Supplemental Brief was filed June 24, 2008. Oral Argument was held on January 20, 2009.

talking, Neal drove by slowly and looked at them. Because they could not tell which of the two Neal was interested in, Johnson and Appellant separated. Neal drove by again and stopped his car closer to Appellant who went over to the car and got into the passenger's side. Neal and Appellant drove around for a few minutes and then drove back to where Johnson was and called him over to the car. Neal and Appellant invited Johnson to join them and the three went to a liquor store and then to Neal's apartment.

¶ 4 While at Neal's apartment, the three drank liquor and Johnson watched TV. When Neal and Appellant started "fooling around" Johnson went outside to let them finish. When he returned, he sat down and continued drinking. Appellant and Neal were sitting on the couch and began arguing. The argument became heated and Appellant jumped up, grabbed a liquor bottle and broke it over Neal's head. He grabbed Neal's hair, pulled his head back and started stabbing Neal in the neck with the broken bottle. When Neal was dead, Appellant directed Johnson to take the TV while he looked through Neal's pockets for money. They left in Neal's car and sold the TV to a man in a parking lot before Appellant dropped Johnson off near his house.

¶ 5 Gerald Dove testified at Appellant's trial that in January of 1983 he was working in the homicide bureau of the Buffalo Police Department. On January 7, 1983, he received a Teletype requesting that Appellant be picked up for a homicide in Oklahoma. Dove and his partner located Appellant and took him into custody. After advising him of his Miranda rights, the Buffalo police questioned Appellant. Appellant told Dove that when he was in Oklahoma he used to try to make money by soliciting homosexuals. He said that he met a young black male about fourteen or fifteen years old who was doing that same thing. He told police that while in Oklahoma City he broke a bottle over the head of a man named Terry. He also said that the young man did not kill the victim but did want to take the victim's TV and search the victim for money. Appellant added that he had told the young man not to say anything about what had happened.

## DISCUSSION

¶ 6 In his Brief in Chief Appellant raises thirteen propositions of error. He alleges in his second proposition that he was denied effective assistance of trial counsel in both the guilt/innocence and the punishment stages of trial in violation of his rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 9 and 20 of the Oklahoma Constitution. The Sixth Amendment right to counsel "is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (*quoting McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.

¶ 7 This Court reviews claims of ineffective assistance of counsel under the two-part *Strickland* test that requires an appellant to show: (1) that counsel's performance was constitutionally deficient; and (2) that counsel's performance prejudiced the defense, depriving the appellant of a fair trial with a reliable result. *Id.* at 687, 104 S.Ct. at 2064; *Davis v. State*, 2005 OK CR 21, ¶ 7, 123 P.3d 243, 246. Under this test, Appellant must affirmatively prove prejudice resulting from his attorney's actions. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067; *Head v. State*, 2006 OK CR 44, ¶ 23, 146 P.3d 1141, 1148. "To accomplish this, it is not enough to show the failure had some conceivable effect on the outcome of the proceeding." *Head*, 2006 OK CR 44, ¶ 23, 146 P.3d at 1148. Rather, Appellant must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Further, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than

one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069.

¶ 8 Appellant filed contemporaneously with his Brief in Chief an Application for Evidentiary Hearing on Sixth Amendment Claims along with supporting documentation. *See* Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2008). Upon finding that the application and accompanying affidavits contained sufficient information to show, by clear and convincing evidence, at least a strong possibility that trial counsel was ineffective for failing to investigate, identify, and/or utilize evidence which could have affected the outcome of Appellant's trial, this Court remanded the case to the District Court of Oklahoma County for an evidentiary hearing on the issues raised in Proposition II of Appellant's brief.[5] *See* Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2008).

¶ 9 In the Order Remanding Cause to District Court of Oklahoma County for Evidentiary Hearing, the district court was directed to hold an evidentiary hearing and make written findings of fact and conclusions of law determining (1) whether the evidence presented by Appellant in support of his claims was available to trial counsel in the exercise of reasonable diligence; (2) whether the failure to use such evidence was a matter of trial strategy; (3) if so, whether such a strategy was reasonable under the circumstances; and (4) the effect such evidence would likely have had on the trial proceedings.

¶ 10 During the course of the two-day evidentiary hearing, the testimony of numerous witnesses was presented. After the conclusion of the hearing, the district court issued thorough findings of fact and conclusions of law as directed by this Court. The district court determined that Appellant had been denied his constitutional right to the effective assistance of counsel during both the first and second stages of trial and recommended that Appellant's Judgment and Sentence be reversed and a new trial ordered. This Court gives strong deference to the district court's findings and reviews only for an abuse of discretion. *Littlejohn v. State,* 2008 OK CR 12, ¶ 28, 181 P.3d 736, 745. *See also Wood v. State,* 2007 OK CR 17, ¶ 39, 158 P.3d 467, 479, *cert. denied,* —— U.S. ——, 128 S.Ct. 507, 169 L.Ed.2d 355 (2007); Rule 3.11(B)(3)(b)(iv), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2008).

¶ 11 The district court, in its written findings of fact and conclusions of law, first addressed the allegations of ineffective assistance affecting the guilt/innocence stage of trial. The district court initially noted that trial counsel was deficient in failing to establish a trust relationship with his client, and had indeed, made the establishment of such virtually impossible by physically threatening Appellant at a pre-trial hearing. The lack of a trust relationship resulted in Appellant's refusal to attend his trial. The district court found that trial counsel's failure to explain Appellant's absence to the jury also exhibited deficient performance.

¶ 12 The district court next found trial counsel suffered from a substance abuse problem during the time he represented Appellant. The court noted that several witnesses who worked either for or with trial counsel during the time he represented Appellant testified that trial counsel became increasingly neglectful of his cases as he spent less time working on cases and more time drinking beer and playing pool during work hours. Trial counsel began missing court appearances. Trial counsel himself admitted at the hearing that during the time of

---

5. Regarding the first stage of trial, Appellant specifically claims that counsel (1) failed to investigate and prepare for trial; (2) failed to challenge the forensic evidence; (3) failed to engage in meaningful cross-examination or utilize readily available impeachment evidence; (4) failed to object to irrelevant and highly prejudicial evidence; (5) failed to request instructions; (6) failed to conduct proper voir dire; and (7) failed to object to a pre-mortem photograph of the victim. Appellant claimed that trial counsel was ineffective in the second stage of trial for (1) inadequate investigation and lack of preparation; (2) failing to prepare and present a mental health expert; (3) failing to properly object to irrelevant, cumulative and unfairly prejudicial evidence in aggravation; (4) failing to object to prosecutorial misconduct; and (5) failing to object to jury instructions.

Appellant's re-trial his life began to crumble and he began drinking heavily and abusing cocaine. He admitted that he was avoiding clients and neglecting cases.

¶ 13 The district court found that the damaging result of the lack of trust relationship and/or the substance abuse problem was that trial counsel failed to properly investigate, prepare and present relevant and readily available evidence at trial. Evidence presented at the evidentiary hearing established that trial counsel failed to utilize numerous boxes containing an abundance of evidentiary documents from Appellant's first trial that should have been used to prepare for the second trial. After trial counsel was appointed to represent Appellant, approximately eighteen boxes of material related to the case were delivered to his office. Trial counsel testified that he went through the boxes to find police reports but he did not go through them "painstakingly." He did not utilize most of the material contained within the boxes but rather opted to create his own trial file by requesting copies of police reports from the district attorney. Because the boxes were taking up too much space in the office, they were moved to a storage shed located in his law partner's back yard where they remained until they were retrieved by attorneys who were preparing Appellant's direct appeal in this case.

¶ 14 The district court also found that trial counsel failed to conduct independent investigation in this case. Although an experienced investigator was assigned to assist him, and the investigator made several attempts to do so, trial counsel did not utilize her services. Trial counsel testified at the hearing that he did not use investigators because he preferred to prepare cases by himself. However, he also admitted that he did not track down any defense witnesses and he did not recall interviewing any of the State's witnesses before trial.

¶ 15 From evidence presented at the evidentiary hearing, the district court found that trial counsel did not review the physical evidence in this case prior to trial. The only forensic evidence connecting Appellant to the crime was a fingerprint taken from the passenger door of the victim's car. Although evidence of this fingerprint was presented at trial, trial counsel was unaware that the original fingerprint card had been lost and that this evidence had not been presented against Appellant in his prior trial. Trial counsel agreed that he had not interviewed the analyst who had examined the fingerprint and he did nothing to test the validity of this evidence. Trial counsel lodged no objection to the admission of the fingerprint evidence.

¶ 16 Trial counsel testified at the evidentiary hearing that two defenses were available at trial. The first defense was that the State's primary witness against Appellant, Fadjo Johnson, was the actual killer and that he lied about Appellant's culpability. The second defense was that if the jury was to believe Johnson at all, they should believe what he said in an earlier affidavit, that Appellant was fending off sexual advances from the victim when the victim was killed. The district court found that significant evidence supporting both defenses existed but that it was not presented by trial counsel at Appellant's trial. Regarding the first defense, a police report existed that indicated that two named witnesses had told police that two young men were in the victim's car on the night of the incident, but the older of the two got out of the car and the victim drove off with the younger "baby-faced" male. Although there was indication that trial counsel had seen this report, he did not use it and did nothing to try to procure the witnesses who gave this information to the police.

¶ 17 With regard to the second defense, the district court noted that although Johnson testified at trial that the victim had performed oral sodomy upon Appellant, he had stated in an earlier affidavit that Appellant had rebuked the victim's sexual advances. Although the medical examiner's report that found no spermatozoa on the oral swabs taken from the victim would have supported Johnson's earlier statement, trial counsel did not utilize this evidence at trial. Nor, as the district court noted, did trial counsel utilize police reports detailing accounts that the victim was known to become loud, offensive and very sexually aggressive and threatening when he had been drinking.

¶ 18 Given that impeachment of Johnson was very important to the defense of the case against Appellant, the district court also found it significant that trial counsel did not utilize Johnson's criminal record which included an assault and battery on a guard at the Children's Center in Taft to impeach the characterization of Johnson by Detective Andrews as "childlike." Nor did trial counsel impeach Johnson with evidence that he fled to Houston after he had been questioned and released by police regarding this case.

¶ 19 Finally, the district court noted that trial counsel provided no reason for failing to request jury instructions on the lesser crimes of manslaughter by resisting criminal attempt or second degree depraved mind murder or on the defense of voluntary intoxication.

¶ 20 With regard to each of these failings of trial counsel, the district court found that the evidence presented in the evidentiary hearing was available to trial counsel with the exercise of reasonable diligence. The district court further found that trial counsel's failure to utilize the available evidence was not a matter of trial strategy. And finally, the district court concluded that trial counsel's performance was deficient and that Appellant was, indeed, prejudiced by this deficient performance. The district court, like the Tenth Circuit Court of Appeals in *Fisher v. Gibson*, 282 F.3d 1283, 1309 (10th Cir.2002), noted that the evidence presented against Appellant at trial was "not overwhelming." It agreed with the Tenth Circuit and found that like Appellant's first trial, his second trial was also "in essence a swearing match between Mr. Fisher and Mr. Johnson, either of whom could have committed the murder, and counsel's errors in this regard actively undermined this critical component of the defense." *Id.* 282 F.3d at 1308. The district court specifically found that under

the circumstances of this case, the numerous failings of trial counsel created a reasonable probability that the outcome of the trial would have been different absent trial counsel's deficient performance.

¶ 21 In the Supplemental Brief of Appellee After Evidentiary Hearing, the State conceded that the evidence presented at the evidentiary hearing established that the evidence relied upon by Appellant to support his claims was available to trial counsel and that counsel's failure to utilize the evidence was not a matter of trial strategy. The State disagreed, however, with the conclusion of the district court that trial counsel's failures had a prejudicial effect on the first stage proceedings. The State argued that in so ruling, the district court overlooked Appellant's admissions and evidence of flight. It is the State's position that even if trial counsel had utilized the available evidence there was not a reasonable probability that this would have changed the outcome of the trial.[6]

¶ 22 While it is true that Appellant made two incriminating statements[7] and did indeed leave the state after the crime in this case was committed, the record of the evidentiary hearing reveals that the district court heard testimony that indicated that trial counsel failed to discover and utilize evidence that would have called into question the validity and import of Appellant's statements. For instance, evidence was presented at the evidentiary hearing that there was physical evidence available that could have been used to dispute Appellant's latter statement in which he claimed to have raped the victim. Further, even if the jury chose to believe the previous and more damaging statement Appellant made to the Buffalo police, this would not foreclose the possibility of a conviction on a lesser form of homicide if trial counsel had laid the proper foundation with available evidence and requested the

---

**6.** The State also argues in its Supplemental Brief that the evidence not utilized by trial counsel would not have supported an instruction on the lesser crime of second degree heat of passion manslaughter. The district court's findings of fact and conclusions of law do not indicate otherwise. Rather, the district court indicated that trial counsel should have requested instructions on manslaughter by resisting criminal attempt

and second degree depraved mind murder based upon his defense.

**7.** As noted above, Appellant's first inculpatory statement was made to Buffalo police. His second statement was made in 2003 to an Oklahoma County jailer. Appellant told the jailer, "I raped and cut a fucking honkie twenty years ago and I'd love to do it to you."

jury be instructed on the lesser crimes. Finally, evidence of Appellant's flight could have been countered by evidence of Johnson's flight, calling into question Johnson's credibility and further planting the seeds of reasonable doubt.

¶ 23 The Sixth Amendment requires that counsel "hold the prosecution to its heavy burden of proof beyond a reasonable doubt." *United States v. Cronic*, 466 U.S. 648, 656 n. 19, 104 S.Ct. 2039, 2045 n. 19, 80 L.Ed.2d 657 (1984). The district court's findings of fact and conclusions of law do not disregard the State's evidence but rather acknowledge that evidence existed that should have been utilized by defense counsel to hold the prosecution to its burden of proof and that failure to discover and utilize this evidence rendered trial counsel's performance deficient. The district court further found that in this case where the evidence against Appellant was not overwhelming, there was a reasonable probability that if the omitted evidence had been utilized and instructions on lesser crimes requested, the outcome of the trial would have been different. Granting the district court's findings and conclusions the strong deference to which they are entitled, we cannot disagree.

¶ 24 With regard to the second stage of trial the district court found that trial counsel's failure to conduct "anything approaching an adequate second stage investigation cannot be labeled a reasonable trial strategy." Thus, the court found that trial counsel's performance in the second stage was clearly deficient. The district court concluded that in light of the evidence presented at the evidentiary hearing, there existed a reasonable probability that if trial counsel had investigated, prepared and presented readily available evidence in mitigation, at least one juror would have concluded that a sentence less than death was appropriate. The State, in its Supplemental Brief, did not dispute these findings of fact and conclusions of law and conceded that Appellant is entitled to second stage relief. Accordingly, we need not discuss the issue further as it relates to second stage proceedings.

¶ 25 Again, while this Court makes the ultimate decision regarding a claim of ineffective assistance of counsel, we give strong deference to the district court's findings and review only for an abuse of discretion. *See Littlejohn*, 2008 OK CR 12, ¶ 28, 181 P.3d at 745. The record and detailed findings of the district court support its conclusions. We therefore reverse the case and remand it for a new trial. Our resolution of this issue renders Appellant's other claims moot.

## DECISION

¶ 26 The Judgment and Sentence of the district court is **REVERSED** and **REMANDED** for a **NEW TRIAL.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2009), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, V.P.J., and CHAPEL and LEWIS, JJ.: concur.

LUMPKIN, J.: concur in results.