OSCN Found Document:BUCK v. STATE

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 BUCK v. STATE
2023 OK CR 2
525 P.3d 39
Case Number: F-2021-453
Decided: 01/19/2023
AARON CHARLES BUCK, Appellant v. THE STATE OF OKLAHOMA, Appellee

Cite as: 2023 OK CR 2, 525 P.3d 39

 

 

SUMMARY OPINION

ROWLAND, PRESIDING JUDGE:

¶1 Appellant Aaron Charles Buck was charged in the District Court of Pottawatomie County, Case No. CF-2019-299, with four counts of Lewd or Indecent Acts to a Child Under 16, in violation of 21 O.S.Supp.2010, § 1123(A)(2). The jury found Buck guilty on counts 1, 2, and 4, and assessed punishment at forty years imprisonment on Counts 1 and 2, and fifty years imprisonment on Count 4. The Honorable Tracy McDaniel, Associate District Judge, who presided over Buck's jury trial, sentenced him accordingly, ordering Counts 2 and 4 to be served concurrently with each other and consecutive to Count 1.[1] Buck appeals his Judgment and Sentence raising the following issues:

(1) whether he was denied the presumption of innocence;

(2) whether he was denied effective assistance of counsel;

(3) whether he was denied his constitutional right to have all elements of the crimes charged submitted to and decided by the jury;

(4) whether his sentence is excessive; and

(5) whether the district court lacked jurisdiction to try his case.

¶2 We find relief is not required and affirm the Judgment and Sentence of the district court.

1.

¶3 Three times during voir dire the trial court referred to the complaining witnesses as "the victims." Buck complains on appeal that these references undermined his presumption of innocence and invaded the province of the jury, shifting the burden of proof. Because Buck did not object below, our review on appeal is for plain error only. See Postelle v. State, 2011 OK CR 30, ¶ 54, 267 P.3d 114, 137 (where defendant did not object to the trial court's remarks made during voir dire, review on appeal was for plain error).

¶4 It is true, as Buck asserts, that the trial court "must not influence jurors in their decision-making process." Postelle, 2011 OK CR 30, ¶ 55, 267 P.3d at 137 (citing Johnson v. State, 2009 OK CR 26, ¶ 4, 218 P.3d 520, 522). This Court has held, however, that "correct statements of law given by the court during voir dire regarding the presumption of innocence combined with the written instructions clearly setting forth the correct statements of the law" may serve to ameliorate the effect of earlier misstatements. Sanders v. State, 2015 OK CR 11, ¶ 25, 358 P.3d 280, 287.

¶5 In the present case, although the trial court referred to the complaining witnesses as "the victims," in voir dire, the trial court also instructed the jury both orally during voir dire and later in written instructions about the presumption of innocence and the State's burden of proof. The trial court also referred to the complaining witnesses as "alleged victims" in its examination by the court. Given the entirety of the record, we find that the trial court's initial misstatements did not rise to the level of plain error. We also find that Buck's claim that the trial court's misstatements were structural error is baseless. Relief is not required.

2.

¶6 Buck contends that he was denied constitutionally effective assistance of counsel. This Court reviews claims of ineffective assistance of counsel de novo, to determine whether counsel's constitutionally deficient performance, if any, prejudiced the defense so as to deprive the defendant of a fair trial with reliable results. Strickland v. Washington, 466 U.S. 668, 687 (1984); Malone v. State, 2013 OK CR 1, ¶ 14, 293 P.3d 198, 206. Under this test, Buck must affirmatively prove prejudice resulting from his attorney's actions. Strickland, 466 U.S. at 693; Head v. State, 2006 OK CR 44, ¶ 23, 146 P.3d 1141, 1148. "To accomplish this, it is not enough to show the failure had some conceivable effect on the outcome of the proceeding." Id. Rather, Buck must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. This Court need not determine whether counsel's performance was deficient if the claim can be disposed of on the ground of lack of prejudice. See Malone, 2013 OK CR 1, ¶ 16, 293 P.3d at 207.

¶7 Buck complains that trial counsel was ineffective for failing to object when the trial court referred to the complaining witnesses as "the victims." The trial court's misstatements were addressed above in Proposition 1. As noted in discussion above, Buck cannot show on this record that, but for counsel's actions, the result of his trial would have been different.

¶8 Buck also argues that trial counsel was ineffective for failing to cross examine the complaining witnesses about their possible motives for accusing him as was done by prior defense counsel at preliminary hearing. Instead, defense counsel at trial opted to challenge the complaining witnesses on why they waited so long to disclose the incidents of abuse. This decision was clearly strategic in nature. "This Court will not second-guess matters concerning trial strategy if there is a reasonable basis for counsel's actions." Lee v. State, 2018 OK CR 14, ¶ 14, 422 P.3d 782, 786 (citing Turrentine v. State, 1998 OK CR 33, ¶ 41, 965 P.2d 955, 971 ("This Court has declined to second guess trial strategy on appeal.")). "That the strategy proved unsuccessful is not grounds for branding counsel ineffective." Turrentine, 1998 OK CR 33, ¶ 41, 965 P.2d at 971.

¶9 Because he has failed to establish either deficient performance or prejudice from his attorney's actions, Buck's ineffective assistance of counsel claim is denied. This proposition does not require relief.

3.

¶10 Buck was charged with lewd acts with a child under 16, in violation of 21 O.S.Supp.2010, § 1123. This section provides for enhanced punishment options when the child victim is under the age of twelve at the time the crime is committed. Buck complains on appeal that his jury should have been instructed that in order to assess punishment at not less than twenty-five years imprisonment they had to find that the victims were under twelve years of age at the time that the crimes were committed.

¶11 Because the record does not show that trial counsel objected to the instructions at issue review on appeal is for plain error. See Newman v. State, 2020 OK CR 14, ¶ 13, 466 P.3d 574, 581. To be entitled to relief for plain error, an appellant must show: "(1) the existence of an actual error (i.e., deviation from a legal rule); (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding." Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. "This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice." Stewart v. State, 2016 OK CR 9, ¶ 25, 372 P.3d 508, 514.

¶12 Buck acknowledges that this Court addressed this very issue holding that, "the age of the victims at the time of the crimes is an element of the crime of lewd acts with a child under 16 for purposes of sentencing and a criminal defendant has a constitutional right to have the jury instructed on this element and the charged offense proved beyond a reasonable doubt." Chadwell v. State, 2019 OK CR 14, ¶ 6, 446 P.3d 1244, 1246-47. See also Alleyne v. United States, 570 U.S. 99, 103 (2013) ("any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury"); Williams v. State, 2021 OK CR 19, ¶ 5, 496 P.3d 621, 624 (following Chadwell holding that "the jury should have been instructed that in order to assess punishment starting at not less than twenty-five years imprisonment, they had to find beyond a reasonable doubt that the victim was under twelve years of age when the crimes were committed").

¶13 Failure to properly instruct in the present case was error which is subject to harmless error analysis. Chadwell, 2019 OK CR 14, ¶ 7, 446 P.3d at 1247 (citing Neder v. United States, 527 U.S. 1, 4, 15, (1999) (the error which occurs when an element of the crime charged is omitted from the jury instructions is subject to harmless error analysis)). See also Williams, 2021 OK CR 19, ¶ 5, 496 P.3d at 624 (following Chadwell and applying harmless error analysis). Accordingly, we apply the harmless error test set forth in Chapman v. California, 386 U.S. 18, 24 (1967) to determine whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict.

¶14 In light of this authority contrary to his position, Buck asks this Court to reconsider our prior rulings and find, under the Oklahoma Constitution, that this error is structural error which can never be harmless. Buck's argument is not persuasive, and we decline to reconsider our prior rulings.

¶15 The uncontested evidence presented at trial was that the child victims were under the age of twelve at the time Buck committed the crimes charged. Accordingly, we find that the instructional error was harmless beyond a reasonable doubt. See Neder, 527 U.S. at 17 ("where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless"). This claim is denied.

4.

¶16 Buck argues that his sentences are excessive. "This Court will not disturb a sentence within statutory limits unless, under the facts and circumstances of the case, it shocks the conscience of the Court." Thompson v. State, 2018 OK CR 32, ¶ 16, 429 P.3d 690, 694. Buck was sentenced within the range of punishment allowed by statute and his sentences were ordered to be served both consecutively and concurrently. The sentences imposed do not shock the conscience. This claim is denied.

5.

¶17 Prior to trial, Buck filed a motion to dismiss arguing that the State lacked jurisdiction to try him under McGirt v. Oklahoma, 140 S. Ct. 2452 (2020) because he is an Indian and the alleged crimes occurred in Indian Country. Buck asserted that he is an enrolled member of the Seminole Tribe and that the alleged crimes occurred in Indian Country within the boundaries of the Kickapoo Reservation.

¶18 The Honorable John Canavan, Jr., Pottawatomie County District Judge, conducted an evidentiary hearing on Buck's motion. The evidence presented at the evidentiary hearing established that Buck is an Indian; the parties stipulated to Defendant's Exhibit 1, which shows that Buck has ¼ quantum of Indian blood and has been enrolled in the Seminole Nation, a federally recognized tribe, since 1976. Other evidence showed that the crimes occurred within the historical boundaries of the Kickapoo Reservation. However, the issue of whether the crimes occurred in Indian Country for purposes of jurisdiction under McGirt remained undecided at the close of the hearing and the trial court took the matter under advisement.

¶19 In subsequent written findings of fact and conclusions of law the trial court found that the Kickapoo Reservation, established by an Act of Congress in 1883, was subsequently disestablished and returned to the United States for value, i.e., allotments and cash. Accordingly, the trial court denied Buck's motion to dismiss. Buck argues on appeal that the trial court's ruling regarding the status of the Kickapoo Reservation was error and the district court had no jurisdiction to try him.

¶20 This Court will afford a district court's factual findings supported by the record great deference and review them for an abuse of discretion. Parker v. State, 2021 OK CR 17, ¶ 34, 495 P.3d 653, 665. "We decide the correctness of legal conclusions based on those facts without deference." Id. The record is sufficient for our resolution of Buck's Indian Country claim.

¶21 The trial court found that the Kickapoo Reservation was established by an Act of Congress in 1883. It further found that subsequently, by Act of Congress, "a major portion of that reservation was ceded back to the United States for value." The trial court noted the "language of cession" in the Act of September 9, 1891, Chapter 203, Article I, 27 Stat. 557, (hereinafter the Act of 1891) as follows:

The said Kickapoo Tribe of Indians in the Indian Territory hereby cede, convey, transfer, and relinquish, forever and absolutely, without any reservation whatever, all their claim, title, and interest of every kind and character in and to the lands embraced in the following described track of country in the Indian Territory. . . .

Additionally, Article II of the Act of 1891, provided:

In consideration of the cession recited in the forgoing article, the United States agrees that in said tract of country there shall be allotted to each and every member, native and adopted, of said Kickapoo tribe of Indians in the Indian Territory, 80 acres of land to conform in boundary to the legal surveys of said land.

¶22 Finally, Article V of the Act of 1891 provided that in addition to the allotments, the United States agreed to pay each Kickapoo Indian a sum of money as "further consideration to be paid for the cession and relinquishment of title above recited. . . ."

¶23 It is true, as Buck asserts, that "once a reservation is established, it retains that status 'until Congress explicitly indicates otherwise.'" McGirt, 140 S. Ct. at 2469 (quoting Solem v. Bartlett, 465 U.S. 463, 470 (1984). While particular words are not required, disestablishment "does require the Congress clearly express its intent to do so, commonly with an explicit reference to cession or other language evidencing the present and total surrender of all tribal interests." McGirt, 140 S. Ct. at 2463 (internal quotations omitted). This Court has noted that "Congress's ratification of a tribe's agreement to 'cede, sell, relinquish, and convey' all of a tribe's 'claim, right, title, and interest in and to all' of its reservation lands previously has been acknowledged to constitute termination of a reservation in language 'precisely suited to this purpose.'" Martinez v. State, 2021 OK CR 40, ¶ 19, 502 P.3d 1115, 1119 (quoting DeCoteau v. District County Court for Tenth Judicial District, 420 U.S. 425, 445 (1975)). See also Rosebud Sioux Tribe v. Kneip, 430 U.S. 584, 597 (1977) (similar language was deemed "'precisely suited' to disestablishment").

¶24 Lest there remain any confusion about the consequences of the language of cession found in the Act of 1891 with regard to the status of the Kickapoo Reservation, the United States Supreme Court's ruling in United States v. Oklahoma Gas & Electric Co., 318 U.S. 206 (1943) puts this doubt to rest. Therein, the Supreme Court found as follows:

The Kickapoo Tribe thereupon, on September 9, 1891 did 'cede, convey, transfer, and relinquish, forever and absolutely, without any reservation whatever, all their claim, title, and interest' to the reservation lands. In consideration each of the Kickapoos, estimated at about 300 in number, was allotted 80 acres of such land with a per capita cash payment. The transaction was ratified, and carried out on the part of the United States and the land acquired by the United States was opened to settlement. Thus, the Kickapoo reservation was obliterated, the tribal lands were no more, and only individual allotments survived. We think it clear that the term 'reservation' as used in the statutes in question had no application to such lands.

Oklahoma Gas & Electric Co., 318 U.S. at 216 (footnotes omitted).

¶25 We affirm the trial court's legal conclusion that Congress explicitly disestablished the Kickapoo Reservation and find that Buck was properly subject to the jurisdiction of the District Court of Pottawatomie County when he was tried for the crimes charged in this case.

DECISION

¶26 The Judgment and Sentence of the district court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2023), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT
OF POTTAWATOMIE COUNTY,
THE HONORABLE TRACY MCDANIEL,
ASSOCIATE DISTRICT JUDGE

 
 
 
 APPEARANCES AT TRIAL

 MICHAEL AMEND
 ATTORNEY AT LAW
 2845 BROCE DRIVE, BLDG. A
 NORMAN, OK 73072
 COUNSEL FOR DEFENDANT
 
 
 APPEARANCES ON APPEAL

 CHAD JOHNSON
 OKLAHOMA INDIGENT
 DEFENSE SYSTEM
 P.O. BOX 926
 NORMAN, OK 73070
 COUNSEL FOR APPELLANT
 
 
 
 
 JEFF MIXON
 ASSISTANT DISTRICT ATTORNEY
 POTTAWATOMIE COUNTY
 DISTRICT ATTORNEY'S OFFICE
 331 N. BROADWAY AVE.
 SHAWNEE, OK 74801
 COUNSEL FOR STATE
 
 
 JOHN M. O'CONNOR
 ATTORNEY GENERAL
 OF OKLAHOMA
 RANDALL YOUNG
 ASSISTANT ATTORNEY
 GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 
 

 

OPINION BY: ROWLAND, P.J.
HUDSON, V.P.J.: Concur
LUMPKIN, J.: Concur
LEWIS, J.: Concur
MUSSEMAN, J.: Concur

FOOTNOTES

[1] Under 21 O.S.Supp.2009, § 13.1, Buck must serve 85% of his sentence of imprisonment before he is eligible for parole consideration.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
2006 OK CR 19, 139 P.3d 907, 
HOGAN v. STATE
Discussed

 
2006 OK CR 44, 146 P.3d 1141, 
HEAD v. STATE
Discussed

 
2009 OK CR 26, 218 P.3d 520, 
JOHNSON v. STATE
Discussed

 
2011 OK CR 30, 267 P.3d 114, 
POSTELLE v. STATE
Discussed at Length

 
2013 OK CR 1, 293 P.3d 198, 
MALONE v. STATE
Discussed at Length

 
2015 OK CR 11, 358 P.3d 280, 
SANDERS v. STATE
Discussed

 
2016 OK CR 9, 372 P.3d 508, 
STEWART v. STATE
Discussed

 
2018 OK CR 14, 422 P.3d 782, 
LEE v. STATE
Discussed

 
2018 OK CR 32, 429 P.3d 690, 
THOMPSON v. STATE
Discussed

 
2019 OK CR 14, 446 P.3d 1244, 
CHADWELL v. STATE
Discussed at Length

 
2020 OK CR 14, 466 P.3d 574, 
NEWMAN v. STATE
Discussed

 
2021 OK CR 17, 495 P.3d 653, 
PARKER v. STATE
Discussed

 
2021 OK CR 19, 496 P.3d 621, 
WILLIAMS v. STATE
Discussed at Length

 
2021 OK CR 40, 502 P.3d 1115, 
MARTINEZ v. STATE
Discussed

 
1998 OK CR 33, 965 P.2d 955, 69 OBJ 2028, 
Turrentine v. State
Discussed at Length

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 13.1, 
Required Service of Minimum Percentage of Sentence - Offenses Specified
Cited

 
21 O.S. 1123, 
Lewd or Indecent Proposals or Acts to Child Under 16
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA